Good morning everyone and welcome to the Ninth Circuit. Judge Friedland and I are happy to welcome Judge Block from the Eastern District of New York who's coming out to help us today. We will hear the cases in the order on the day sheet. The first case is Alvarado-Rodriguez v. Barr which is submitted on the briefs. The second case is Roscon-Gamez v. Barr which is submitted on the briefs. And the first case for oral argument is Chavez-Olivera v. Barr. May it please the court, Karina Ordonez for petitioner, Norma Angelica Chavez-Olivera. I would like to reserve two minutes for rebuttal and I will pay attention to the clock. This honorable court should remand this case to allow the agency to consider the court's intervening decision in Barajas-Romero v. Lynch. As the record before this court compels a finding contrary to the agencies for relief in the form of withholding of removal and or protection under the convention against torture. This is a mixed motive case where the agency and immigration judge completely disregarded the record before them by watering down the facts, and by doing so, applied the law incorrectly. The petitioner, similar to Ms. Sheery, suffered from past persecution from the cumulative effect that she was severely psychologically traumatized from witnessing around 15 Mexican police officers and communitarios, a rural quasi-governmental entity, shoot in the air, ransacked her mother-in-law's home, steal property. Just let me go back to Barajas-Romero for a moment. I thought that the BIA said the respondent did not present sufficient direct or circumstantial evidence indicating that the caller's threats were motivated in any way by her political beliefs. So why would we have to remand for Barajas-Romero when there's no indication that the BIA thought there was any effect of her political beliefs? Your Honor, the agency failed to realize that the administrative record, specifically on pages 645, 654, and 652, actually are reports against the officers at the Human Rights Commission. So does she say that they were politically corrupt or there was corruption? I thought she was just complaining that they weren't diligent enough. No, Your Honor. She actually indicates that these are violations that are done by the police, and she wanted sanctions against them for the disappearance of her husband and her family member. So did she say they were politically corrupt or that there was corruption? She said they had been involved in the original kidnapping. Was that her point? I mean, I saw the complaints that she made that the police weren't being diligent enough to follow up on her claims. She made the complaint to the Attorney General's office. She made the complaint to the Ministry of Public Safety. And what specifically are you saying is the complaint? Well, the complaint that she made was specifically regarding the actions of the police officers failing to press criminal charges against her family members and then kidnap and disappear them. This was a forced disappearance. And because of those issues and what she complained about their actions against the family members, when they- So what I saw was she said when they beat up her husband and her brother-in-law, they said they're kidnappers and murderers. That's her report, the reason that they attacked her husband and her brother-in-law. Is that wrong? Well, that's what she was informed by the commander when they were kidnapping and disappearing her husband while she was watching them. However, later on, there was no criminal investigation, no charges filed against them, and this turned into a forced disappearance. That's why on August 2nd, after she was informed by the local police that she needed to go to the Human Rights Commission to be able to make the complaint, is when she went to the Human Rights Commission, and that's when the subsequent threats began to occur. Towards her and her children, that she would face the same fate as her husband. And did they say on account of her political opinions, or did they just say you should stop investigating us? What they indicated was you should stop looking for your husband. And what she understood was that those were the threats because she was disclosing the actions of the Mexican police and this quasi-governmental entity, the comunitarios, a rural police force, had done against her husband and her family members. So are you saying that any time somebody complains about police misconduct, that constitutes a political belief that that person is expressing? It is a whistleblowing action, and by her whistleblowing and her disclosing what they had done on July 4th of 2013, it is an imputed political belief because they know she witnessed it. And the fact that she actually took action and disclosed it to the Human Rights Commission and to the public administration, the investigator in the Attorney General's office, it is a whistleblowing act. Would your answer be the same if she did not disclose this to the Human Rights Commission? She disclosed it to the Human Rights Commission. Would your answer be the same if she did not do that? If she had not disclosed it to the Human Rights Commission, then she would have not been complaining against the actions of the police. So is the disclosure to the Human Rights Commission what you think triggers the political opinion issue? Yes, Your Honor, and it also triggers the threat that she receives. When she only filed reports regarding the missing persons, her husband and her brother-in-law, she did not receive threats. She only received the threats when she actually filed it with the Human Rights Commission. And that is established in the record when we look through the timeline. A stated- Can you explain again the difference then? What was the difference between the earlier complaints and the later? Did they have different content? They did have different content, Your Honor. The first ones were basically going to the local jails, going to the hospitals to find out what if they needed bail or if they needed to hire an attorney. It would seem more as if. But when we look at the Human Rights Commission reporting, she actually is complaining about the specific actions, the irregularity of the police actions towards her husband and her brother-in-law that disappeared forcibly. And that is what she's complaining about and even seeking sanctions for. And it specifically says in her complaint to the agency. The petitioner in this case filed many reports and complaints with various agencies. She filed the regular reports. She didn't begin receiving threatening calls to the number that she provided in her actual complaint to the human rights. And that's when the caller threatened that she did not look for her husband. It was between August 2nd and December 3rd of 2013 that the petitioner moved with her children three times after the first threat. Her youngest child was a toddler. Her children were ranging between age two to 15, who was also battling brain tumor at the time. On December 3rd, she finally filed her second complaint with the Human Rights Commission. And that's when the petitioner specifically requested sanctions against the Mexican Federal Police and Communitario. That's an administrative record 656. During the second phone call the petitioner received, in addition to threatening her, the caller reminded her of the previous phone call where she was instructed to stop looking for her husband. That's administrative 529. The anonymous threats the petitioner received are akin to the anonymous threats threatening note left on the machinery vehicle. These threats caused the petitioner to feel terror of being severely beaten. And that we can find in administrative records 604, 610, and 612. Let me slow you down if I can. You're making these factual assertions in support of your aspect of your appeal. You're saying that that constitutes torture, and therefore you're entitled to relief under the Convention Against Torture. I'm just trying to understand what you're trying to say now. Your Honor, we believe it's both persecution and torture, yes. It's the cumulative effect of what she went through. So for persecution, you have to overcome the so-called hurdle of a political belief. But how about the cap? You don't have to deal with that, but you have to show torture and acquiescence by the government. How do you support that in your petition? Your Honor, it was the phone number that she provided to the Human Rights Commission to file these complaints to get information. That phone number is this exact phone number that she received the threats on. This phone number was her husband's cell phone. It was only used for the purpose of filing the complaints and if her husband called. The direct correlation and the strict timeline between her filing the complaint and then a week or two after receiving the threat is why we can prove the acquiescence. It's either a government official calling or the government official provided the number to the person that's calling to threaten her. But you think she has fear of torture because of that, that she's going to be tortured? Yes, Your Honor. By the fact that she watched what happened to her husband, and then these phone calls are specifically telling her that it would be to her and her children. It would amount to torture, the psychological. What do we do about, it seems like she was in Mexico for about 18 months though. Even if she was moving around, she wasn't actually found during that time. What do we make of that part of the record? During the time that she received the threats are exactly from August to January of 2014. During that period of time, she actually moved seven times. After January 2014 was the last threat that was to her specifically, but it wasn't until January of 2015 that her son received the last threat. And that is when she finally decided to go to Tijuana to present herself. That threat was from the government? I thought that was from the Caballeros Templar. Yes, Your Honor, that was even the Knights Templar. Is that the government or is that a gang? It is a cartel slash gang. And we would believe that because of the phone number that was provided, and it happened right after the murder that happened to her neighbor. And after she had contact with the Mexican Federal Police and identified who was living there, is the reason why she received the phone call. You're down to your last seconds if you want to reserve. Thank you, Your Honor. May it please the court. I'm Jonathan Robbins here on behalf of William Barr, the Attorney General. Good morning to all of you. The facts of this case are certainly sympathetic. What happened to Petitioner was terrible and deplorable. But unfortunately, sympathetic facts don't always establish eligibility for relief in immigration law. And the board and immigration judge's decision in this case did follow the law correctly and did reach the correct result. The board in this case did properly find that Petitioner failed to establish eligibility for withholding of removal and protection under the regulations implementing the Convention Against Torture. With respect to the aspect of withholding of removal, the board based its decision or upheld the immigration judge's decision on two primary findings. Based on Petitioner's failure to demonstrate past harm rising to the level of persecution. And also based on Petitioner's failure to demonstrate a nexus to a statutorily protected ground. Now of those two findings, the most important one is the nexus finding. And the reason it's the most important is because it's dispositive of the entire case. If the court agrees or disagrees with the immigration judge and the board on that point, it doesn't need to reach the issue of whether the threats that she suffered are sufficient to rise to the level of persecution. So given that it's the most important part of the case, unless your honors have any questions, I'll start with the nexus requirement. It's well established when it comes to withholding of removal that not every type of harm, even serious types of harm, are sufficient to establish eligibility for relief. And what the Supreme Court has said when we're looking at nexus is that the first question that we ask in any nexus analysis is what is the persecutor's motive? That's critical, did the persecutor know that the person had a characteristic and did they care that they have a characteristic? Now Petitioner's claim is based on her political opinion. She's claiming that this is a whistle blowing case. The problem with that claim is that there isn't really any evidence to support the notion that these anonymous callers had any interest in her political opinion or attributed an opinion to her. You say that issue also resolves the cat issue as well? I'm a little confused about that. I'm sorry, it's dispositive of the withholding of removal claim. The cat issue, it's not dispositive of the cat issue. I'm sorry if I didn't make that clear. With respect to withholding of removal, the nexus requirement is dispositive of the claim and the court wouldn't have to reach the past harm. So with respect to the evidence of the record, Petitioner herself doesn't really know what the motivations of these callers are. It's the problem you have when you have a case where you have anonymous callers. At one point she speculates that it's the cartel that she argued to the board that she thought that maybe these were cartel members because of the final call that her son had received from the Caballeros Templar. But at one point she also suggests that maybe it's just government officials. She doesn't really know. And the problem is that when you have evidence that you don't really know what the motivations of the persecutors are, you're going to have a very difficult time proving that the record compels a conclusion from the record. And so what we have here is, I think the board and immigration judge appropriately pointed out. They said, look, what we have here is an individual who was reporting the disappearance of her father and, excuse me, her husband and her brother-in-law. And we don't really have anything more than that. And given that- It seems that your opposing counsel is focusing on the difference between the complaints that were made that weren't really complaining about the police and asking for sanctions than the ones that were and that the threats came after that and the phone number was connected with the ones that asked for sanctions. So how do we not draw an inference from that? The documents or the complaints that are in the record, not all of the reports that she filed are in the record. I believe these are the most recent ones in the record. From what I saw from those reports, those reports are not making any whistle blowing accusations. They're simply, I think the board and immigration judge correctly found, that that just simply shows that she was reporting the disappearance of her husband. With respect to the phone number, she testified that she received a phone call from the brother-in-law and husband the next day. And so they had apparently, it's not clear what phone she was talking about, but I believe it was her husband's cell phone upon which they received those calls. So the inference that this is somehow something that the government told them, it seems like she had also received phone calls because the husband and brother-in-law had provided this. Because that's how she had originally spoke to them in that phone call that she received a week after this incident. After the incident where the house was, I guess, a raid on the house, essentially. So I don't know that it can necessarily be inferred that that phone number was provided by government officials who didn't want to be reported on. So ER 656 does ask for an investigation that applies sanctions, but you think that's not a whistle blowing complaint? Let me just turn to the record to make sure I'm looking at the correct document here. 656, the signature, if you look at the, it does mention a complaint and she does. I mean, yes, she does report that she has made other complaints. But this is sort of a series of complaints that she's made in trying to figure out different avenues of relief to try and figure out where her husband and her brother-in-law are. I don't know that this is necessarily properly read as a whistle blowing activity. And again, it's not the actual document that's the most important thing. The question is, what is the persecutor's motive? Is the persecutor's motive such that they are attributing her or viewing her as a whistle blower? I don't know that there's really evidence in the record that suggests that that's the case. When she received the phone calls from the anonymous callers, they didn't make any mention of political opinion or attribute any political opinion to her. This isn't a type of situation where a petitioner is railing against a governing institution. It seems like she's going against people who are, I guess, defying the institution, right? I mean, clearly, whoever the anonymous callers are, are concerned about the governing institution, right? That's the whole point of threatening her to try and prevent her from reporting, because obviously they are not in cahoots with, they're concerned about whatever these reports might, whatever consequences these reports might bring. Or at least, presumably, that's what we, it sort of feels like. We don't really know, because we don't know who the callers are. I mean, it's possible they're cartel members. It's possible they're people within law enforcement. We just simply don't know. So, the problem when you have a record like this is, under the standard overview, the record has to compel a conclusion that the persecutors have attributed this motive to her. And based on evidence that scans, I don't think the record compels that conclusion. Maybe a reasonable fact finder could make those inferences, but I think it's perfectly reasonable for the immigration judge- We're pretty much bound by the fact finder's determination here. Correct, Your Honor. It's the appellate court. Correct, and I don't think it was an unreasonable determination by the immigration judge in this case. I mean, given the scans of the evidence, it seems like the appropriate decision. How about the cat issue? I'm concerned about that, because it seems like she did report that she was threatened with death if she continued to contact the authorities. Doesn't that constitute torture? Well, death, yes. Death would constitute torture, but in order to establish eligibility for cat protection, an individual has to demonstrate several things. They have to demonstrate a clear probability of torture. In other words, a more than 50% chance of torture. One of the things that the immigration judge and board looked at was pointing out that she hasn't really been able to establish a series of different things that are related to that. One of the problems is that she can't show Mexican government acquiescence. I'm going to interrupt you. I just escaped from the Brooklyn Federal Courthouse, where we had the pleasure of El Chapo's company for the last couple of months. And my successor, Judge Cogan, actually presided over that case. What if, hypothetically, these calls were from El Chapo? Well, hypothetically speaking, I suppose, if you were able to demonstrate that there was Mexican government acquiescence to those activities. There were the police authorities from the cartel. This was that El Chapo's cartel. Maybe it was a different cartel. Why would it be any different? Well, just because a cartel threatens you doesn't necessarily mean that the Mexican government is going to acquiesce. It's always a case by case circumstance. And under the circumstances of Petitioner's case, when she was making reports to police, they were opening investigations. It's that we can't just- So you would agree that if it was El Chapo who called in his cartel, that this would ring the bell under the CAAT standard? Well, if the evidence in the record showed that El Chapo, that the government was so corrupt that there was essentially the equivalent of Mexican government acquiescence- We know that these cartels are linked to the government. El Chapo bribed the president of Mexico $100 million. I think it's common knowledge that when a cartel threatens you from Mexico, that's pretty serious. They're oftentimes, look, we do know that the cartels do oftentimes corrupt Mexican government officials. But there is countervailing evidence in this record that does show that the Mexican government is taking steps to try and combat this type of corruption. Well, they arrested El Chapo. What else did they do? Well, that's true. They did arrest El Chapo. But the point is, look, nobody would argue that there isn't any corruption with respect to the cartels in Mexico. But under the standard of, excuse me, under the burden of proof, an individual has to demonstrate a clear probability of torture. And given that there's evidence here that the police were, in fact, trying to open investigations into what happened. Given the fact that the country conditions reports in this case does demonstrate that the Mexican government is trying to combat these cartels. And the corruption that the cartels do sometimes successfully perpetuate. I don't think the record compels a conclusion that she's met that, what is frankly a pretty owner's burden of proof. She also hasn't demonstrated that, we sort of skipped over this, but it goes to the past harm. She certainly hasn't suffered any past torture. Past torture can obviously be very important in determining whether or not there's a likelihood of future torture. But this sort of brings us back into the persecution area with respect to the past harm that she suffered. She did suffer threats, and the board and immigration judge, as this court, have acknowledged that threats are deplorable, they're unpleasant, they're disturbing. It was not an empty threat. They said the same thing would happen to you that happened to your husband. Well, that's not entirely clear, Your Honor. Whether it was an empty threat is not clear, because what's clear from the record is that she's not in a similar situation as her husband and brother-in-law. When these federal police or the communitarios or whoever these people were came to the house, they didn't similarly attack her or her children. They were only focused on the brother-in-law and the husband. And she is given several reasons as to why that might be. She speculates that perhaps her brother-in-law was involved in a kidnapping. She's not really sure. Again, it sort of goes back to the scantness of the evidence. But what's clear is that she's not similarly situated to her other family members. So the reason that she's facing harm is not the same reason that her other family members were facing harm. She's facing harm because, I see him over time. Please wrap up. Okay. So with respect to the decision, we would respectfully request that the court uphold the decision of the Board of Immigration Appeals and deny the petition for review. And unless the court has any other questions, we'll leave it at that. Thank you very much for your time, Your Honors. I have a few seconds left for rebuttal. Thank you, Your Honor. If we look at the affidavit on AR 529 of the top paragraph, it specifically indicates that she received a threatening call, they had told her to stop looking for it. And that she still needed to find it, and that's when she went to the Human Rights Commission to continue to file against the police. There is a clear nexus of her whistleblowing in the past persecution. We do believe that this amounts to torture based on the psychological harm of her watching and witnessing what 15 Mexican federal officers did to her husband and brother-in-law. And for these reasons, Your Honor, we would ask that you reverse and remand. Thank you. We thank both sides for their arguments. And the case of Chavez-Olivera versus Barr is submitted.
judges: Ikuta, Friedland, Block